OPINION
KING, Circuit Judge:
This appeal relates to whether James S. Gilmore, III, the Governor of the Commonwealth of Virginia (the “Governor”), is protected by the Eleventh Amendment from suit in the underlying action — an issue the Governor failed to raise in the district court prior to this appeal. In the underlying case, the district court granted a preliminary injunction barring enforcement of Virginia Code section 46.2 930, which prohibits loitering on designated bridges. See Order and Opinion of November 2, 1999 (“Order”); Order of June 1, 2000 (“Modifying Order”).
The Governor and his fellow defendant, Charles D. Griffith, Jr., the Commonwealth’s Attorney for the City of Norfolk (“Griffith”), do not seek to overturn the injunction on its merits. Rather, the Governor asserts that he lacks a sufficient connection to enforcement of the challenged statute and, thus, cannot be made a party to this action pursuant to the exception to sovereign immunity found in Ex parte Young, 209 U.S. 123,159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (permitting federal actions against appropriate state officers for prospective relief from continuing violations of federal law). Although we possess jurisdiction, we remand in order for the district court to consider the issue in the first instance.
I.
A.
Enacted in 1966 and last amended in 1989, the challenged statute provides, in its entirety:
Pedestrians shall not loiter on any bridge on which the Commonwealth Transportation Commissioner has posted signs prohibiting such action. Any person violating the provisions of this section shall be guilty of a traffic infraction.
Va.Code Ann. § 46.2-930 (Michie’s 1998 & Supp.2000). The maxi-mum penalty for violating the statute is a fine of two hundred dollars. See Va.Code Ann. § 46.2-113 (Michie’s 1998). For purposes of arrest, traffic infractions are treated as misdemeanors. See Va.Code Ann. § 46.2-937 (Michie’s 1998). Otherwise, traffic infractions are “violations of public order ... and not deemed to be criminal in nature.” Va.Code Ann. § 18.2-8 (Michie’s 1996 & Supp.2000).
The powers of the Governor are set forth in article V of the Constitution of Virginia and in the Virginia Code. The Governor is the chief executive officer of the Commonwealth of Virginia (the “Commonwealth”). See Va. Const, art. V, § 1. He must “take care that the laws be faithfully executed.” Va. Const, art. V, § 7. He appoints the Superintendent of State Police, see Va.Code Ann. § 52-2 (Michie’s 1998), and he is the commander-in-chief of the Commonwealth’s armed forces, see Va. Code Ann. § 44-8 (Michie’s 1999). The Governor has the authority to summon law enforcement agencies to suppress riots and preserve the peace when local efforts prove insufficient. See Va.Code Ann. § 18.&-410 (Michie’s 1996). He also has the power to request criminal prosecutions by the Attorney General, see Va.Code Ann. § 2.1-124 (Michie’s 1995 & Supp.2000).
B.
The plaintiffs, David Lytle, Jeanette Ly-tle, and Joan Maguire (collectively, the “Lytles”), filed this action under 42 U.S.C. § 1983 seeking to enjoin enforcement of section 46.2-930 on the ground that the Virginia statute unlawfully abridges First *407 and Fourteenth Amendment rights.[1] The Lytles are anti-abortion protesters who, on July 16, 1999, faced arrest pursuant to section 46.2-930 during a demonstration on the Picadilly Overpass, a pedestrian bridge crossing Interstate 64 in the City of Norfolk (the “City”). The Lytles displayed large placards from the bridge — which bore a no-loitering sign — to passing motcuv ists on the interstate highway below. Some forty-five minutes into the demonstration, police arrived and warned the Lytles and fellow protesters that they would be arrested unless they ceased their activities. The Lytles left the overpass after observing the arrests of two of their confederates. It was later discovered that despite the no-loitering sign, the overpass had not been designated by the Commonwealth Transportation Commissioner (the “Commissioner”) under the provision of section 46.2-930.
C.
Following their encounter with police, the Lytles received assurances from representatives of the Commonwealth and the City that enforcement of section 46.2-930 would be — at least temporarily — suspended, and charges were dismissed against the two protesters who had been arrested. Unappeased, the Lytles filed their action in the district court and immediately moved for a preliminary injunction. The district court heard arguments on their motion on October 7, 1999, and, the following day, received additional written assurances from the Governor and Griffith regarding the Commonwealth’s enforcement of the statute. ‘ Being “unpersuaded that the defendants’ assurances adequately protect the constitutional rights of the plaintiffs[,]” the court granted the preliminary injunction. See Order, at 6, 24. The injunction prohibits enforcement of section 46.2-930, bars further designation of any bridges under the statute, directs immediate covering or removal of existing no-loitering signs, and orders “whatever steps are necessary and appropriate to notify local law enforcement within the Commonwealth regarding the substance of this Order[.]” Id. at 24.
The Governor and Griffith filed a notice of appeal on December 3, 1999. On appeal, they alleged for the first time that: (1) the injunction violated the principles of sovereign immunity because, by its express language, it enjoined “the Commonwealth” directly;[2] (2) sovereign immunity protects the Governor from this action; *408 and (3) because the Governor should be dismissed as a party, the scope of the injunction should be limited to the City.[3]
After filing their notice of appeal on December 3, 1999, the Governor and Griffith finally raised the sovereign immunity issues in the district court, in a December 14, 1999 motion to dismiss the Governor and to modify the Order. They also requested a stay of the preliminary injunction pending appeal. However, according to the district court, these motions were neither scheduled for hearing by counsel nor referred to the court for a decision on the briefs. Then, on March 30, 2000, the Governor and Griffith filed a second motion to dismiss, again raising many of these same issues in the district court. This motion, unlike the earlier motions, was scheduled for hearing. The court, “[i]n the interest of efficiency, judicial economy, and to clear any confusion in the record of this case,” chose to discuss each of the pending motions. See Modifying Order, at 2. However, after reviewing relevant authorities regarding the Governor’s sovereign immunity defense, the court deferred ruling on the motion to dismiss pending disposition of this appeal. See id. at 2-9, 12. The court also clarified the language of its earlier Order, see id. at 12; supra note 2, and denied the motion for a stay of the injunction pending appeal, see Modifying Order, at 12.
II.
We possess jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1), to hear appeals from orders granting injunctions. Moreover, although the ground for appeal in this case — sovereign immunity — was not raised in the district court, we nonetheless possess jurisdiction to determine the matter. See Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir.1997) (recognizing that a court may consider the issue of Eleventh Amendment immunity, because of its jurisdictional nature, at any time).
III.
A.
The Eleventh Amendment provides that “[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const, amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by “Citizens of another State,” it is well established that “an unconsenting State is immune from suits • brought in federal courts by her own citizens as well as by citizens of another State.” Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). State officers acting in their official capacity are also entitled to Eleventh Amendment protection, because “a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official’s office.” Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted).
A well-recognized exception to this rule is found, however, in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows suits against state officers for prospectivé equitable relief from ongoing violations of federal law. See Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (“We do not ... question the continuing validity of the Ex parte Young doctrine.”). In Ex parte Young, the Su *409 preme Court began with the premise that states are incapable of authorizing unconstitutional conduct, and created the fiction that a state officer engaging in unconstitutional conduct is no longer acting as a state agent — and, thus, is no longer protected by the Eleventh Amendment. See 209 U.S. at 159-60, 28 S.Ct. 441. As to identifying proper defendants, the Court held that
[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.
Id. at 157, 28 S.Ct. 441 (emphasis added). The Court further instructed that “[t]he fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, ... whether it arises out of the general law, or is specially created by the act itself[.]” Id.
B.
In this case, the Lytles assert that the Governor has a sufficient connection under Ex parte Young to the enforcement of section 46.2-930 because he has a duty to “take care that the laws be faithfully executed,” Va. Const, art. V, § 7; he is the chief executive officer of the state, see id. art. V, § 1; he is the commander-in-chief of the Commonwealth’s armed forces, see Va.Code Ann. § 44-8; he has authority to order state and local law enforcement agencies to preserve the peace, see id. § 18.2-410; and he appoints the Superintendent of Police, see id. § 52-2. Additionally, they argue that because their fellow protesters “were arrested, handcuffed, and taken into custody for purportedly violating the loitering statute!,] • • • the offense must be deemed criminal in nature[.]” Brief of Appellees, at 14 n. 7 (emphasis in original). Thus, the Lytles reason, the Governor has the power, pursuant to Virginia Code section 2.1-124, to request the Attorney General to prosecute violations of section 46.2-930.
The Governor, on the other hand, asserts that a violation of the statute is a non-criminal traffic infraction that does not implicate his authority to seek prosecutions by the Attorney General. He also rejects the purported connections between the gubernatorial powers cited by the Ly-tles and enforcement of the anti-loitering statute. The Governor argues that the Lytles are left with his general duty to “take care that the laws be faithfully executed,” Va. Const, art. V, § 7, which is simply not sufficient to merit an exception to sovereign immunity. Moreover, the Governor asserts that “it is difficult, if not impossible, to imagine the Governor using the power of his office to enforce the act— a traffic violation.” Reply Brief of Appellants, at 9.
In addition to these factual and legal disputes, the Governor and Griffith assert that rather than choosing the Governor as a defendant, the Lytles should have either sued the Commissioner, or brought their case as a class action naming one or more Commonwealth’s Attorneys as class representatives, see, e.g., Virginia Soc’y for Human Life, Inc. v. Caldwell, 152 F.3d 268 (4th Cir.1998). The Lytles counter that the only relevant duty of the Commissioner with regard to section 46.2-930 is determining where to post anti-loitering signs, and he has no authority over state and local law enforcement agencies. Further, although they perhaps could have sued Commonwealth’s Attorneys as class representatives, they instead, “as masters of their complaint, ... appropriately chose to sue the chief executive officer of the state, Governor Gilmore[.]” Brief of Appellees, at 29.[4]
*410 C.
Although we possess jurisdiction to decide the sovereign immunity issue, see supra Part II, we also have the discretion to decline to do so until the district court has had the opportunity to consider the matter. Where “ ‘[t]he District Court is in the best position to address in the first instance the competing questions of fact and state law necessary to resolve the [Eleventh [Ajmendment issue,’ ... we remand for that purpose.” Keller v. Prince George’s County, 827 F.2d 952, 964 (4th Cir.1987) (quoting Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)); accord Gray v. Laws, 51 F.3d 426, 434 (4th Cir.1995); Roberts v. College of the Desert, 870 F.2d 1411, 1415 (9th Cir.1988) (“We decline to decide this [Eleventh Amendment] question, believing that it is one for the district court to determine in the first instance, coincident with the development of an appropriate factual record.”).
In Keller, we were presented with an Eleventh Amendment argument that rested on whether a county social services department was an arm of the state government. See 827 F.2d at 964. We remanded the case to the district court to develop a record on the issue and perhaps “resolve some of the [Eleventh [A]mendment difficulties in this case by permitting amendments to the pleadings.” Id. Facing a similar question in Gray, we remanded for the district court to reconsider the sovereign immunity issue in light of intervening Supreme Court precedent. See 51 F.3d at 430, 434. Citing Keller, we noted that it was “especially true” that the district court was in the best position to address the issue in the first instance, “given the barrenness of the record.” Id. at 434.
The sovereign immunity issue raised by the Governor encompasses two significant questions: (1) What is the Governor’s connection, if any, to the enforcement of the challenged anti-loitering statute? and (2) If there is a connection, is it sufficient to implicate the exception to sovereign immunity found in Ex parte Young? The first question, at least, requires a determination of disputed questions of fact and state law — and we have been provided with an incomplete record on which to address these questions, even if we were mandated to do so.
By remanding, we enable the district court to handle this case in the normal and most orderly fashion, and we permit it to address in the first instance the relevant questions of fact and state law. Moreover, in light of the disagreement over the naming of appropriate defendants, the district court may consider permitting amendments to the pleadings to resolve any Eleventh Amendment difficulties in this case. Such a remand would not, apparently, be unwelcome by the district court. In staying the motion to dismiss the Governor pending our decision, Judge Friedman commented:
The Court understands and agrees that the claim for immunity is not waived if not argued before the District Court. However, the Court questions the defendant’s tactic and use of judicial re *411 sources in pursuing an appeal of a preliminary injunction on a jurisdictional issue without first addressing the question at the District Court level.
Modifying Order, at 3. We note also that, although the district court deferred ruling on sovereign immunity, the court had first researched and discussed the applicable authorities on this question. Because we conclude that the district court should have the opportunity to address this issue in the first instance, we are constrained to remand.[5] REMANDED

. Additionally, the Lytles seek a declaratory judgment that the statute is unconstitutional, and nominal damages from the City of Norfolk (the "City”). They also requested nominal and punitive damages from Charles Brewer, a lieutenant of the Norfolk Police Department, but he was dismissed as a party on December 15, 1999. According to the briefs filed in this court, the district court thereafter granted leave to the Lytles to file an amended complaint naming the City as a defendant.

. This issue — naming of "the Commonwealth” directly — was rendered moot, however, when the district court modified the injunction to replace dubious references to “the Commonwealth” with the names of the Governor and Griffith. See Modifying Order, at 12. The court explained that it had used the term "the Commonwealth” to refer to the Governor and Griffith throughout its earlier opinion on the motion for preliminary injunction, and had mistakenly carried over that shorthand reference into the injunction order. See id. at 9. "[T]he Commonwealth,” the district court clarified, "is not a defendant in this matter, and the Court should have been more clear in its Order enjoining the enforcement of the statute.” Id. (footnote omitted).
We note that the Modifying Order was issued on June 1, 2000, subsequent to the filing of the notice of appeal. Generally, the filing of a notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals. See In re Grand Jury Proceedings Under Seal, 947 F.2d 1188, 1190 (4th Cir.1991) (citations omitted). However, the district court possessed jurisdiction to modify the injunction under an exception to the general rule: "[A] district court does not lose jurisdiction to proceed as to matters in aid of the appeal.” Id. (citations omitted). The district court aided in this appeal by relieving us from considering the substance of an issue begotten merely from imprecise wording in the injunction.

. When the merits of the preliminary injunction were argued in the district court, the Governor and Griffith asserted that the Commonwealth would be irreparably harmed if the court enjoined enforcement of section 46.2-930, because the statute is "one of the tools available to the Commissioner ... to promote safety on Virginia roadways.” Order, at 11. The Governor and Griffith have not raised any such safety concern on appeal, and do not otherwise challenge the merits or propriety of the injunction.

. Although the district court deferred ruling on the sovereign immunity issue, it did agree with another of the Lytles’ contentions, that "the Governor’s inconsistency in litigating *410 cases in the Commonwealth (as to whether he does or does not move to dismiss when he is named personally in a case) cuts against the Governor’s argument that he should be immune from suits challenging the constitutionality of state statutes under the Eleventh Amendment.” Modifying Order, at 7. The district court observed:
Most notably, the [Lytles] refer to the Governor's status as a defendant in the recent partial birth abortion case, Richmond Medical Center for Women v. Gilmore, 11 F.Supp.2d 795 (E.D.Va.1998).... The Governor argues that his litigation tactics in other cases should not impact this Court's decision, and essentially, that he should not be required to make consistent legal arguments in each case. While the inconsistency of the Governor's arguments should not be the sole basis for denying the instant motion, the Court disagrees with the Governor’s position on this issue.

Id.

. We observe that it is passing strange to utilize an interlocutory appeal of an injunction (where we possess jurisdiction under 28 U.S.C. § 1292(a)(1)) to seek review of an issue never raised in the district court, particularly in a circumstance where the appellant has abandoned appellate review of the injunction’s propriety. See supra note 3. We have not addressed the merits of this issue, and need not do so; our position may or may not . be in accordance with that espoused in the dissent of our good Chief Judge. Rather, we believe this case should be handled in a routine and orderly manner, and without the specter of an advisory opinion on an issue the district court has not been permitted to fully address. While the dissent maintains that "[rjemanding this case serves only to encourage future plaintiffs to denominate Governors routinely as party defendants in the hope that a 'special relation' may one day appear,” post, at 13 n.*, remand should in fact serve to discourage litigants and their counsel from engaging in court-shopping, an untoward maneuver that, as the district court indicated, may well lie at1 the root of this unusual appeal.