Michael Patrick ROBERTSON,
Plaintiff,

v.

L. David HUFFMAN, Sheriff of Cataw-
ba County, in his official capacity;
David T. Flaherty, Jr., District Attor-
ney for Catawba County, in his offi-
cial capacity; Jason Parker, Assistant
District Attorney, in his individual ca-
pacity; Jim Hudson, Detective for the
Catawba County Sheriff's Depart-
ment, Individually; and the North
Carolina Department of Correction,
Defendants.

No. CIV. 5:00CV174–H.

United States District Court,
W.D. North Carolina,
Statesville Division.

Feb. 23, 2001.

J. Neal Rodgers, Tim L. Harris & Asso-
ciates, Charlotte, NC, for Plaintiff.

James R. Morgan, Jr., Womble, Carlyle,
Sandridge & Rice, Winston–Salem, NC,
Mark J. Pletzke, James J. Coman, Raleigh,
NC, Elizabeth F. Parsons, NC Dept. of
Justice, Raleigh, NC, for Defendants.

## MEMORANDUM AND ORDER

HORN, Chief United States Magistrate Judge.

THIS MATTER is before the Court on the Defendant North Carolina Department of Correction's "Motion to Dismiss [with Memorandum in Support]" (document # 4) filed December 12, 2000, and the Defendants Flaherty and Parker's "Motion To Dismiss" (document # 10) and "Brief Supporting ..." (document # 11), both filed January 5, 2001. The Plaintiff's "Brief in Opposition ..." (document # 13) was filed January 23, 2001. No reply has been filed and the time for filing a reply has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant* both motions and *dismiss* the Complaint as to these Defendants.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Defendant L. David Huffman was at all times relevant herein the Sheriff of Catawba County, North Carolina. Sometime prior to September 23, 1998, the Defendant David T. Flaherty, Jr., was elected District Attorney of Catawba County.[1] The Defendant North Carolina Department of Correction ("DOC") is an administrative agency of the State of North Carolina tasked with, among other things, operating the State's prisons and maintaining the State's Public Access Informa-

tion System ("PAIS"), that is, North Carolina's sex offender database.

On May 6, 1986, the Plaintiff, Michael Patrick Robertson, now a citizen and resident of South Carolina, was divorced from Teresa Robertson. The divorce decree, entered in the District Court of Gaston County, North Carolina,[2] placed the custody of the parties minor children with Mrs. Robertson and allowed the Plaintiff to visit with the children every other Saturday. Over the next two years, the Plaintiff and Mrs. Robertson fought bitterly concerning the children.

On August 12, 1988, Teresa Robertson filed a Motion in the Cause in the state court matter seeking to eliminate the Plaintiff's visitation with the children. She alleged that the Plaintiff had not paid child support; that he had physically abused their son Chad, then age six; and that the Plaintiff had sexually abused their daughter Brandy, then age seven.

On September 12, 1988, the state court judge ordered the parties to submit their dispute to mediation and modified the Plaintiff's visitation privileges only to the extent that visitation with Brandy would be "supervised" until the mediation concluded. However, Teresa Robertson refused to comply with the order; that is, she did not participate in mediation and did not allow the Plaintiff to see his children.

On February 16, 1989, the Plaintiff was summoned to the Gaston County Courthouse to respond to charges of failing to pay child support. While there, he was detained by deputies of the Gaston County Sheriff's Department until officers from the Catawba County Sheriff's Depart-

---

1. Bob Thomas was apparently the District Attorney prior to Mr. Flaherty's tenure. Mr. Thomas is not a Defendant in this action and the Plaintiff has alleged no misconduct or liability on his part.

2. The affidavits and state court documents referenced below were attached and incorporated into the subject Complaint.

ment[3] arrived and arrested the Plaintiff for sexual assault.[4]

On November 3, 1989, following a one and one-half day jury trial, the Plaintiff was convicted of two counts of First Degree Sexual Offense in Catawba County, North Carolina, Superior Court, and sentenced to two concurrent life sentences. The State's principal evidence was Brandy Robertson's testimony that her father had sexually assaulted her.

On April 1, 1998, then sixteen year old Brandy Robertson executed an Affidavit recanting her previous testimony and stating unequivocally that her father never assaulted her. She identified her assailant as her uncle, Brady Polk—the Plaintiff's brother-in-law—who was by then charged with sex crimes against other minor children.[5] It is undisputed and, indeed, Teresa Robertson has also averred, that Brandy's trial testimony, as well as the allegations generally, were *false*. Brandy Robertson further avers that on the morning that her father's trial began,[6] she, for the first time, made a direct statement to officers of the Catawba County Sheriff's Department, including Defendant Detective Jim Hudson, and Defendant Catawba County Assistant District Attorney Jason Parker that the Plaintiff had *not* assaulted her.

Despite the Plaintiff's conclusory allegations of "coaching" or "coercion," even when taken in the light most favorable to the Plaintiff, Brandy's affidavit shows that Defendants Parker and Hudson dismissed her recantation as a product of a young child's fear of confronting her father regarding a crime he *did* commit. Defendant Parker told Brandy, "[y]ou said it was your Daddy, and if you are lying, you can go to jail, so you have to tell the judge he did this to you. You don't have to be scared now because nobody is going to hurt you again."

The Plaintiff alleges that, in light of Brandy's "new story" and other evidence that Teresa Robertson had denied the Plaintiff regular contact with Brandy *prior to* the alleged date of the crime—that is, May 14, 1988—the trial should have been continued and the investigation reopened.

On May 1, 1998, the Plaintiff, represented by two attorneys, filed a Motion for Appropriate Relief in Catawba County Superior Court. Sometime thereafter, he was transported from a DOC prison to the Catawba County Jail to await a hearing on his motion.

On September 23, 1998, the Plaintiff and his two attorneys signed a Release absolving the Defendant Sheriff and his deputies; former District Attorney Bob Thomas, Defendant District Attorney Flaherty, and

---

3. The record does not disclose where the Plaintiff or Teresa Robertson and the minor children resided, except that sometime prior to "Fathers' Day 1988," the Plaintiff had moved from Catawba County back to Gaston County.

4. The exact charge was for violation of N.C. Gen.Stat. § 14–27.4, that is, "on May 14, 1988, engaging in a sex offense with Brandy Michelle Robertson, a child under the age of 13 years."

5. The record reflects that prior to the Plaintiff's arrest and conviction, some family members considered Brady Polk a more likely

suspect than the Plaintiff. On at least one occasion prior to trial, Brady Polk's wife—the Plaintiff's sister—Shirley Polk, urged Brandy to "tell the truth," that is, that her father had *not* assaulted her. The Plaintiff alleges that, prior to his trial, Brandy made repeated statements to her mother and other family members that her father had *not* sexually assaulted her, which statements members of the Plaintiff's family relayed to the District Attorney's office.

6. Brandy Robertson was eight years old at this point in the proceedings.

their assistants; and the State of North Carolina—that is, all of the Defendants in the instant action—as well as all of the State's prosecuting witnesses, from any civil liability arising from the Plaintiff's conviction and prison sentence. The Release clearly states that the Plaintiff had been informed that such releases are valid under Supreme Court precedent.[7]

Later that same day, and with the signed consent of the Catawba County District Attorney's office, an Order for Dismissal of Charges was entered which dismissed the conviction and all charges, ordered the Plaintiff's immediate release, and expressly stated that the Plaintiff had voluntarily signed the Release which was "attached to this Order for purposes of reference."

The Plaintiff alleges that unnamed Catawba County Sheriff's Deputies and Assistant District Attorneys coerced him into signing the Release; that is, they allegedly told him that "it could be months, possibly longer" before he would be released from prison unless he signed the Release.

Despite the dismissal of all charges on September 23, 1998, the DOC continues to list the Plaintiff as a "sex offender inactive status" on its sex offender database.

On November 16, 2000, the Plaintiff filed the instant action, alleging (1) a claim for monetary damages under 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution; (2) the same claims as in (1) but restated under the North Carolina Constitution; (3) a state law claim for undue influence and duress in the execution of the Agreement;[8] (4) a claim (against the DOC only) for an injunction requiring the DOC to remove the Plaintiff's name from its sex offender database; and (5) a claim for punitive damages. The Defendant Sheriff and Defendant District Attorney have been sued only in their official capacities, whereas Defendant Assistant District Attorney Parker and Defendant Deputy Hudson have been sued in their individual capacities.

On December 12, 2000, the DOC filed a Motion to Dismiss for lack of subject matter and personal jurisdiction.[9]

On January 5, 2001, District Attorney Flaherty and Assistant District Attorney Parker filed their Motion To Dismiss. These motions have been briefed, as set forth above, and are now ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. *The Standard*

■ "A motion to dismiss under [Fed. R.Civ.P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v.*

---

7. Because determination of the instant motions is made on other grounds, the undersigned expressly reserves judgment on the validity of the Release.

8. The Complaint contains no express statement of the type of relief sought as a result of the alleged undue influence and duress. In the light most favorable to the Plaintiff, the Third Claim for Relief impliedly seeks a declaratory judgment that the Agreement is void. In both their Motion and Brief in Support, these Defendants have addressed the Third Claim as if it *does* contain a claim for declaratory relief.

9. The Plaintiff has not filed a timely or specific response to the DOC's motion. However, in his "Brief in Opposition [to Flaherty and Parker's Motion to Dismiss]..." at 7 (document # 13), the Plaintiff "hereby dismisses with prejudice" the Complaint as to the DOC except as far as the Complaint "seeks ... relief against ... the DOC so as to preclude [it] from raising the Release ... as a defense to any [future] action."

*Martin,* 980 F.2d 943, 952 (4th Cir.), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *citing* 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996)(en banc), *citing Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *and Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). *Accord Republican Party of NC,* 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir.1992); *and Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

A. *DOC's Motion to Dismiss (document # 4)*

As noted above, the Plaintiff did not file a timely response to the DOC's Motion to Dismiss and has not responded in any fashion except to state in its opposition to the *other* Motion to Dismiss that "upon consideration of [the DOC's] motion … and brief … Plaintiff hereby dismisses

with prejudice," except insofar as the Complaint "seeks … relief against … the DOC so as to preclude [it] from raising the Release … as a defense to any [future] action." *See* "Brief in Opposition [to Flaherty and Parker's Motion to Dismiss] …" at 7 (document # 13). Therefore, for the reasons stated therein, the Court will *grant* the DOC's "Motion to Dismiss …" (document # 4) and *dismiss* the Complaint as to the DOC.

B. *Motion to Dismiss Claims Against District Attorney in His Official Capacity (document # 10)*

■ At the outset, the undersigned notes that the claims against District Attorney Flaherty relate only to the execution of the Release in 1998, and not to the allegations of suborned perjury in 1989. Moreover, these claims are unequivocally brought against Defendant Flaherty in his official capacity as Catawba County District Attorney and seek monetary damages. The Plaintiff's Third Claim for Relief, in the light most favorable to the Plaintiff, also includes a claim for a declaratory judgment that the Agreement is void. Such claims for monetary damages and retrospective declaratory relief are clearly precluded by the Eleventh Amendment.

The Fourth Circuit Court of Appeals addressed Eleventh Amendment immunity recently, stating:

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another

State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). *State officers acting in their official capacity are also entitled to Eleventh Amendment protection*, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

*Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir.2001) (emphasis added).

In a contemporaneous decision, the Court re-affirmed the principle that a State's Eleventh Amendment immunity will not be negated "absent (1) a valid abrogation of that immunity by Congress, (2) a State's clear and unequivocal waiver of immunity, or (3) the prosecution of an action that fits comfortably within the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Bell Atlantic MD, Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 288 (4th Cir.2001). *Accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("*Pennhurst II*"); *and Lytle*, 240 F.3d. at 409.

It is well-established that Congress did not abrogate the states' sovereign immunity when it created a private right of action under 42 U.S.C. § 1983. *Accord Will*, 491 U.S. at 66, 109 S.Ct. 2304 (state official sued in official capacity under 42 U.S.C. § 1983 immune under Eleventh Amendment); *and Edelman*, 415 U.S. at 663, 94 S.Ct. 1347. The Plaintiff has not argued, nor is the undersigned aware of, any other Congressional abrogation of Eleventh Amendment immunity applicable to these claims.

Nor, notwithstanding the Plaintiff's contentions to the contrary, has the State of North Carolina waived its immunity by enacting the North Carolina Tort Claims Act, N.C. Gen.Stat. §§ 143–291. *See In re Secretary of Dept. of Crime Control and Public Safety*, 7 F.3d 1140, 1146 (4th Cir. 1993) ("And we see nothing in the text of [the Act] that fairly can be read as an expression of the State's consent to suits against itself in federal court ... much less the "unequivocal" expression of such consent required by the Supreme Court's Eleventh Amendment jurisprudence"). This is especially true in light of North Carolina's express provision that an erroneously convicted person's sole remedy for compensation "shall be addressed to the [North Carolina] Industrial Commission." N.C. Gen.Stat. §§ 148–82–84. *Accord Solomon v. Dixon*, 724 F.Supp. 1193, 1195 (E.D.N.C.1989), *aff'd*, 904 F.2d 701 (4th Cir.1990).

Lastly, "a State's sovereign immunity under the Eleventh Amendment is lifted in certain cases to allow federal jurisdiction over suits that seek *prospective injunctive relief* [under *Young* ]." *Bell Atlantic*, 240 F.3d at 289. *Accord Pennhurst*, 465 U.S. at 105, 104 S.Ct. 900. Even construing the Complaint most generously, however, the Plaintiff is seeking only declaratory relief for a past violation of law, rather than prospective injunctive relief for a *continuing violation* of federal law and, therefore, the *Young* exception does *not* apply. *Accord Green v. Mansour*, 474 U.S. 64, 71–74, 106 S.Ct. 423, 88 L.Ed.2d 371 (1982) (*Young* provides only for prospective injunctive relief from a continuing violation of federal law, and not for declaratory relief for a past violation of federal

law); *Pennhurst,* 465 U.S. at 105, 104 S.Ct. 900; *and Bell Atlantic,* 240 F.3d at 289.

In short, under the Eleventh Amendment, the Defendant District Attorney in his official capacity is immune from suit for these claims and, accordingly, his Motion to Dismiss must and will be *granted.*

### C. Motion to Dismiss Claims Against Assistant District Attorney Parker (document # 10)

In contrast to the claims against District Attorney Flaherty, the Plaintiff has sued Assistant District Attorney Parker in his individual capacity for "coercing" and "coaching" Brandy Robertson's false testimony, that is, for suborning perjury. Defendant Parker has raised the affirmative defense of absolute prosecutorial immunity.

In *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that absolute immunity protected a prosecutor from civil suit for knowingly using perjured testimony and suppressing material evidence at the plaintiff's murder trial. 424 U.S. at 431, 96 S.Ct. 984. *Accord Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) ("absolute prosecutorial immunity is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself"); *Buckley v. Fitzsimmons,* 509 U.S. 259, 271–72, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (applying *Imbler;* focus of immunity analysis is "conduct for which immunity is claimed, not the harm caused ... [and] acts undertaken ... in preparing ... for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity [which] extends to ... interviewing and preparing witnesses"); *Dababnah v. Keller–Burnside,* 208 F.3d 467, 470 (4th Cir.2000) ("absolute immunity is afforded prosecutors when acting within the advocate's role"); *and Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir.1996) (applying *Imbler* to extend immunity to prosecutor who allegedly suborned perjury before a grand jury by actively seeking out a witness who was willing to lie).

In *Dababnah, supra,* the Fourth Circuit noted that extending civil immunity to alleged prosecutorial abuses was balanced to some extent by the fact that such abuses "are subject to criminal and professional sanction." 208 F.3d at 471. *Accord Malley v. Briggs,* 475 U.S. 335, 343 n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *and Imbler,* 424 U.S. at 429, 96 S.Ct. 984.

Even when taken as true, the facts, as alleged in the Complaint and Brandy Robertson's affidavit which was attached thereto and incorporated by reference, establish that Assistant District Attorney Parker refused to accept Brandy Robertson's trial day recantation and coerced her into testifying falsely. These allegations fall squarely within the *Imbler* standard as applied by the Fourth Circuit in *Lyles, supra,* that is, conduct that Defendant Parker undertook while carrying out "the advocate's role." 79 F.3d at 377. Accordingly, Defendant Parker is entitled to absolute immunity and his Motion to Dismiss will be *granted.*

### III. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Defendant North Carolina Department of Correction's "Motion to Dismiss" ("document # 4") and the Defendants Flaherty and Parker's "Motion To Dismiss" (document # 10) are GRANTED and, as to these Defendants, the Complaint

is hereby DISMISSED WITH PREJU-DICE.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.