HOUSECALLS HOME HEALTH CARE, INC., Housecalls Healthcare Group, Inc., and Terry Ward, Individually, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Mike Leavitt, Individually as Secretary, State of North Carolina, Department of Health and Human Services, Carmen Hooker Odom, Individually as Secretary, State of North Carolina Department of State Treasurer, Richard M. Moore, Individually as Secretary, Defendants.

No. 1:06CV00691.

United States District Court, M.D. North Carolina.

July 23, 2007.

Thomas Barstow Kobrin, Greensboro, NC, for Plaintiffs.

· Richard James Votta, N.C. Department of Justice, Raleigh, NC, for Defendants.

### ORDER

WILLIAM L. OSTEEN, JR., District Judge.

In this Standing Order 30 proceeding, the Magistrate Judge has recommended that Defendant United States Department of Health and Human Services and Mike Leavitt's motion to dismiss be granted and all claims against them be dismissed; that Defendant North Carolina Department of State Treasurer and Richard Moore's motion to dismiss be granted and all claims against them be dismissed; and that Defendant North Carolina Department of Health and Human Services and Carmen Hooker Odom's motion to dismiss be granted in part and denied in part. Defendants State of North Carolina, Department of Health and Human Services and Carmen Hooker Odom, individually as Secretary, timely filed a response and objections to the recommendation and Plaintiffs filed a response to the objections. Defendants State of North Carolina, Department of Health and Human Services and Car-men Hooker Odom, individually as Secretary, responded.

This court has conducted a review of the file and has determined that the recommendation of the Magistrate Judge is appropriate and should be adopted.

The court adopts the recommendation of the Magistrate Judge entered April 5, 2007, as its own findings and conclusions.

IT IS THEREFORE ORDERED that Defendant United States Department of Health and Human Services and Mike Leavitt's motion to dismiss is **GRANTED** and all claims against them are dismissed.

IT IS FURTHER ORDERED that Defendant North Carolina Department of State Treasurer and Richard Moore's motion to dismiss is **GRANTED** and all claims against them are dismissed.

IT IS FURTHER ORDERED that Defendant North Carolina Department of Health and Human Services and Carmen Hooker Odom's motion to dismiss is granted in part and denied in part. This matter shall proceed as to the part of Plaintiffs' § 1983 claim which seeks (1) prospective declaratory relief concerning whether 42 C.F.R. § 455.23 requires a continuing active investigation or the filing of legal proceedings in order to justify the continued withholding of funds and whether there is such an investigation concerning House-calls Home Health Care, Inc., and (2) the claim seeking an injunction ordering the return of seized property. All other claims are dismissed.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

RUSSELL A. ELIASON, United States Magistrate Judge.

This case is before the Court on three separate motions to dismiss brought by (1)

Defendants the United States Department of Health and Human Services (USDHHS) and its Secretary, Mike Leavitt (Federal Defendants), (2) Defendants North Carolina Department of Health and Human Services (NCDHHS) and its Secretary, Carmen Hooker Odom (NCDHHS Defendants), and (3) the North Carolina Department of State Treasurer and its Treasurer, Richard Moore (Treasurer Defendants). Because the motions to dismiss are based on a failure to state a claim or involve "facial" jurisdictional challenges, the Court will, where factual questions are concerned, rely on the facts alleged in Plaintiffs' complaint. It will assume that they are true, and construe them in the light most favorable to Plaintiffs. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992)(motion to dismiss for failure to state a claim); *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (discussing facial jurisdictional attacks which do not challenge the facts of a complaint). Those facts are as follows.

### FACTS

Plaintiffs are two North Carolina Corporations which formerly did business in North Carolina and their owner, Terry Ward. At some unidentified point in the past, NCDHHS issued Plaintiff Housecalls Home Health Care, Inc. (Housecalls) a Certificate of Need to provide home health care to Medicaid and Medicare patients in North Carolina. Housecalls would provide the care under a contract and then apply for payment. Plaintiffs allege that the contract was between it, USDHHS, and NCDHHS and that the applications for payments were to USDHHS through NCDHHS. (Docket No. 1 ¶¶ 7–9.)

In 1985, Housecall's certificate of need covered all 100 counties in North Carolina. In 1990, Plaintiffs claim that NCDHHS asked Housecalls to restrict its geographic area, but that it refused to do so. Subsequent legal action to limit the certificate also failed. Plaintiffs allege that Bill Berlin, apparently an employee of NCDHHS, then began to obtain unjustified warrants to seize Housecalls' records and other property. These seizures occurred in 1993 and 1997. (*Id.* ¶¶ 11–12.)

Also in 1997, NCDHHS attempted to revoke the license and certification of Housecalls. However, Housecalls passed the review procedure and retained its license and certification. Around that same time, NCDHHS and Defendant Carmen Hooker Odom's predecessor in office notified Housecalls that it would be withholding payments for Medicaid patients under 42 C.F.R. § 455.23. (*Id.* ¶ 14.) This regulation allows state agencies overseeing Medicaid reimbursement programs to withhold payments from service providers where there is "reliable evidence that the circumstances giving rise to the need for a withholding of payments involve fraud or willful misrepresentation under the Medicaid program." 42 C.F.R. § 455.23(a). It allows the payments to be withheld temporarily until either "(1) [t]he agency or the prosecuting authorities determine that there is insufficient evidence of fraud or willful misrepresentation by the provider; or (2)[l]egal proceedings related to the provider's alleged fraud or willful misrepresentation are completed." 42 C.F.R. § 455.23(c)(1) & (2). Since April of 1997, Housecalls has received no payments on any of its reimbursement requests. (Docket No. 1 ¶ 15.)

Plaintiffs acknowledge that, at the time the withholding of payments began, NCDHHS was actively investigating allegations against Housecalls and that it was doing so with the help of the United States Attorney and the North Carolina Attorney General. This investigation resulted in the

seizure of most of the equipment and records of Housecalls. Plaintiff Housecalls Healthcare Group, Inc. owned the equipment. Naturally, the withholding of payments, coupled with the seizure of the equipment and records, caused Housecalls to go out of business. Plaintiffs claim that this was the intent of NCDHHS in taking the actions that it did. (*Id.* ¶¶ 20–21.)

Plaintiffs allege on information and belief that the United States Attorney and the North Carolina Attorney General have completed their investigations into Housecalls' activities and that no other government agencies are currently investigating Housecalls. According to Plaintiffs, no criminal charges or civil actions have been filed regarding any investigations. Still, NCDHHS continues to withhold the Medicaid payments under 42 C.F.R. § 455.23. (*Id.* ¶¶ 24–27.)

Based on these facts, Plaintiffs have raised several causes of action. The first is for declaratory relief. They ask that a declaratory order be issued stating that 42 C.F.R. § 455.23 requires an active investigation for funds to be withheld, that there is no active investigation of Housecalls, and that Housecalls is entitled to payment of the funds withheld by Defendants.

Plaintiffs' second claim for relief is one for breach of contract. They claim that a contract existed requiring the Federal Defendants and the NCDHHS Defendants to make Medicaid payments to Plaintiffs under a statutory scheme and that the wrongful withholding of the payments violates this contract.

Plaintiffs' third and fourth causes of action contend that the Federal Defendants

and the NCDHHS Defendants violated the United States and North Carolina Constitutions by depriving Housecalls of its property (including monies due), seizing Housecalls Healthcare Group, Inc' s. equipment, and depriving Terry Ward of his businesses without due process of law. Their fifth claim is similar and is raised under 42 U.S.C. § 1983.

Plaintiffs' sixth, and final, claim is titled as one for injunctive relief. They believe that the withheld Medicaid payments are in the possession of the Treasurer Defendants. Plaintiffs ask that the Court order the NCDHHS Defendants and Treasurer Defendants to release the withheld monies, that the Court order the Federal Defendants and the NCDHHS Defendants to release the withheld monies, and that the Court order the Federal Defendants and the NCDHHS Defendants to return the property seized during the investigation of Housecalls. Each set of defendants has filed a separate motion seeking to have the claims dismissed.

### *FEDERAL DEFENDANTS' MOTION*

The Federal Defendants' primary argument in favor of their motion to dismiss is that the Court lacks subject matter jurisdiction because Plaintiffs have not alleged that the Federal Defendants have waived sovereign immunity. The United States, because it is a sovereign government, is immune from suit unless it consents to be sued. *F.D.I.C. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). This immunity extends to federal agencies and to government officials sued in their official capacity[1]. *Research Triangle In-*

---

**1.** It is not entirely clear from the captioning of the case whether Defendant Mike Leavitt is being sued in his individual or official capacity. The caption states in self-contradictory fashion that he is being sued "Individually as Secretary." Similar phrasing is used for De-

fendants Odom and Moore. The Federal Defendants conclude that Leavitt is being sued in his official capacity only. The Court agrees based on the nature of the allegations made in the body of the complaint. *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir.1995)(where capacity

*stitute v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987 (4th Cir.1997)(federal agencies); *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir.1998)(government officials). Any alleged consent to suit must be "unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)) It is Plaintiffs' burden to show that subject matter jurisdiction exists. *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir.2005).

▪ Plaintiffs do not dispute the basic sovereign immunity principles set out above. However, they do make two arguments that sovereign immunity does not bar their claims. Plaintiffs first rely on 5 U.S.C. § 702, which is part of the Administrative Procedures Act (APA). That statute states, in pertinent part, that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

This statute quite clearly does not operate as a waiver of sovereign immunity as to certain of Plaintiffs' claims. In their complaint, Plaintiffs seek relief in the form of compensation for the damages allegedly caused by the breaches of contract and compensation for the property seized by Defendants, including the value of the payments seized, the fair market value of the seized equipment, and lost business value. (Docket No. 1 Prayer for Relief ¶ 3–2.) This is not relief "other than money damages" and sovereign immunity is not even arguably waived for these claims.

On the other hand, Plaintiffs have also asked for declaratory and injunctive relief and these forms of relief might fall within the statute. In their response, they simply note that they have asked for those types of relief and state that the APA allows them. Looking at Plaintiffs' complaint, it does ask for declaratory and injunctive relief. The declaratory relief is aimed at "Defendants," but given the nature of the requested declaration and the overall complaint, it would not apply to the Federal Defendants. By its very clear terms, the regulation that Plaintiffs seek to have interpreted deals with State Medicaid agencies, not the Federal Defendants. 42 C.F.R. § 455.23. Also, the declaratory relief section of the complaint seeks a release of payments that the factual portions of the complaint allege were withheld by the NCDHHS Defendants. (Docket No. 1 ¶¶ 15, 16, 31, 36) The complaint does not allege that the Federal Defendants hold these funds. The portion of the complaint seeking injunctive relief fares no better. It seeks an injunction ordering the Federal Defendants to release payments withheld by the NCDHHS Defendants. (*Id.* ¶ 59.)

The fundamental flaw in Plaintiffs' argument is that they seek a remedy against the Federal Defendants without the required showing of their liability for a legal

is not specifically alleged, the court must look at the claims, relief sought and course of proceedings to determine capacity). Plaintiffs state that this is incorrect and that they

have made factual allegations against Leavitt in his individual capacity. However, as will be discussed later, their "factual allegations" are really legal conclusions.

violation. This principle constitutes a fundamental underpinning of our judicial system which is necessary to preserve it as a justice system based on law, as opposed to one founded in *ad hoc* notions of policy, fairness or need. *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 638 (4th Cir.2007). As the court in *Bacon* found:

> Our legal system is built on the foundational principle that remedies are a means of redressing wrongs. As the Supreme Court has long made clear, a remedy must be tailored to a violation. *See, e.g., Swann v. Charlotte–Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). "As with any equity case, the nature of the violation determines the scope of the remedy." *Id.* Remedies, in other words, do not exist in the abstract; rather, they flow from and are the consequence of some wrong. At its most basic, this principle limits the reach of judicial decrees to parties found liable for a legal violation. *See id.*

The Supreme Court's decision in *Milliken v. Bradley* is instructive. In that case, the Supreme Court held it beyond the limits of judicial power to interfere with the operation of entities that have not violated plaintiff's rights. *Milliken v. Bradley*, 418 U.S. 717, 744–45, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) [hereinafter *Milliken I*]. Accordingly, the Court vacated the interdistrict desegregation order at issue there precisely because it contemplated "restructuring the operation of local governmental entities that were not implicated in any constitutional violation." *Hills v. Gautreaux*, 425 U.S. 284, 296, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976) (interpreting *Milliken I*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974)). In sum, a legal violation is a "necessary predicate for the entry of a remedial order." *Id.* at 297[, 96 S.Ct. 1538], 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792.

Recognizing the ancient maxim that an entity may not be made the subject of a remedial decree absent some finding of liability, courts-since the days of *Marbury v. Madison*—have viewed remedial questions as the second prong of a two-step inquiry. A court first determines whether this defendant has wronged this plaintiff. Only if this antecedent inquiry is answered in the affirmative does the court speak to the remedial issue, asking "2d. If [plaintiff] has a right, and that right has been violated, do the laws of [t]his country afford him a remedy?" *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 154, 2 L.Ed. 60 (1803). Preserving the link between remedies and violations is not only a matter of avoiding unfair impositions on a party. It also expresses an important separation of powers principle, ensuring that court edicts are grounded in the requirements of law and not in notions of judicial policy. Court-ordered decrees therefore "exceed appropriate limits" when they are "imposed upon governmental units that were neither involved in nor affected by" the violation. *Milliken v. Bradley*, 433 U.S. 267, 282, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) [hereinafter *Milliken II*].

*Id.*

An entity cannot be ordered to release money held by another entity without showing a right or duty and the ability to cause the same, which Plaintiffs fail to do. As already discussed, Plaintiffs allege that the State Defendants hold the money and do not show the Federal Defendants have control over it. The complaint also seeks an injunction ordering the Federal Defendants to release property seized during the investigation of Plaintiffs. This requested relief ignores the fact that the factual por-

tions of the complaint clearly allege that the seizure was made by the NCDHHS Defendants. It does not claim that the Federal Defendants either initially seized, or now control, any property. Therefore, it asks for injunctive relief that cannot be granted even if the factual portions of the complaint are accepted as true.

In a portion of their response dealing with a separate issue, Plaintiffs argue that the Federal Defendants have failed to exercise their oversight responsibilities over the State Defendants. They claim that states participating in the Medicaid program must comply with regulations promulgated by the Federal Defendants and that those parties have the authority to ensure compliance. They seek to have the Court force the Federal Defendants to tell the State Defendants to release the withheld payments or face having all Medicaid distributions now flowing from the Federal Defendants to the State Defendants stopped.

The initial problem with Plaintiffs' argument is that they did not request this relief in their complaint. Their complaint asks only for (1) the release of the withheld payments, (2) the return of seized property, (3) a declaration that regulations require an ongoing investigation, that there is not one, and that Plaintiffs are entitled to the withheld reimbursement payments, and (4) an injunction ordering that various Defendants release money and/or seized property. The complaint does not request that this Court order the Federal Defendants to order the State Defendants to do anything. And equally, if not more importantly, the complaint fails to allege, and Plaintiffs fail to show, any basis for compelling such direct action.

The Federal Defendants do not deny that they have some ability to oversee the activities of the State Defendants who are administering the State's Medicaid program. In fact, 42 U.S.C. § 1396c gives the Federal Defendants the authority to withhold Medicaid funding to a state if a state plan or a state's actions under its plan are not in substantial compliance with the Medicaid Act. However, this statute has been construed to give the USDHHS Secretary unreviewable discretion as to whether or not make a compliance determination. Nothing in the statute indicates that a private party can force a compliance decision or seek court review of such a decision. *Trustees of Masonic Hall and Asylum Fund v. Leavitt,* Nos. 5:84–CV–991, 5:84–CV–992, 2006 WL 1686405, *15 (N.D.N.Y.2006)(unpublished). The APA explicitly does not allow the Court to review decisions where an "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Because the decision of the Federal Defendants to engage in compliance procedures against the State Defendants is such an action, the APA cannot operate as a waiver of the Federal Defendants' sovereign immunity in this suit.[2] *Masonic Hall* at *7–8.

Plaintiffs point to no other basis for forcing the Federal Defendants to pressure the State Defendants into compliance. They have not requested relief that can be granted and have not met their burden in establishing a waiver of sovereign immunity under the APA as to the claims that they do raise against the Federal Defendants.

Plaintiffs' second argument regarding sovereign immunity is that their case involves a claim that the Federal Defendants

---

**2.** In support of their argument that the APA waives sovereign immunity in this case, Plaintiffs cite to the case of *Thompson v. United States Department of Housing and Urban De-*velopment, No. CIV.A.MJG–95–309, 2006 WL 581260 (D.Md. Jan. 10, 2006). However, the limits in 5 U.S.C. § 701(a) were not discussed as an issue in that case.

have deprived them of their rights under the United States Constitution. Therefore, they contend that this claim is one properly brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). That case allows a cause of action against federal officers for tortious violations of constitutional rights. Plaintiffs contend that theirs is such a case.

 *Bivens* does not create general purpose liability for federal officials. Rather, its scope is more limited. *Bivens* allows only claims based on tortious conduct against defendants sued in their individual capacity. *Norton v. United States,* 581 F.2d 390, 393 (4th Cir.1978). Not only this, but individual defendants must have directly and personally participated in the tort. There is no *respondeat superior* liability in a Bivens action. *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir.2001). Finally, mere negligence is not enough to establish a claim under *Bivens. Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir.2001).

 There are two significant problems with Plaintiffs' allegations as they pertain to stating a *Bivens* claim against Leavitt. First, all substantive factual allegations in Plaintiffs' complaint are made against various State Defendants. (Docket No. 1 ¶¶ 6–31.) Defendant Leavitt's name is not even contained in those paragraphs.[3] Second, where Leavitt is mentioned in the complaint, Plaintiffs lump him with other Defendants and even his predecessors in office. This is inconsistent with both an individual capacity suit in general and a *Bivens* action in particular. In the section of the complaint setting out the Plaintiffs' constitutional claims, they state in conclusory fashion that "Defendants United States Department of Health and Human Services, Mike Leavitt, and his predecessors in position as Secretary," along with the NCDHHS Defendants, deprived Housecalls of its contract without due process of law. They then go on to allege that the NCDHHS Defendants deprived Housecalls and Housecalls Healthcare Group Inc. of their money, property, and business. (*Id.* ¶¶ 44–45.)

The allegations against Leavitt are not factual allegations, but are instead legal conclusions. These would be acceptable had Plaintiffs alleged some factual basis for the legal conclusions. However, they have not. Even more importantly, the factual allegations they did include in the complaint actually indicate that any breach of any contract was caused by the NCHHS Defendants and not Leavitt. There is no factual allegation contained anywhere in the complaint that Leavitt even personally knew of Plaintiffs' contract or other dealings with the State Defendants or knew of the State Defendants' actions in seizing Plaintiffs' business and property. There is simply no allegation that he personally played a role in the State Defendants' actions. Rather, it is entirely clear that the complaint seeks to hold Leavitt liable for the actions of others. This is not sufficient to state a proper *Bivens* claim. Plaintiffs have failed to state a claim under *Bivens* and have failed to show that the Federal Defendants have waived sovereign immunity for any of the claims against them. The claims against the Federal Defendants should be dismissed.

### *TREASURER DEFENDANTS' MOTION*

The first argument of the Treasurer Defendants is that suit against them is barred

---

**3.** In their response brief, Plaintiffs cite to paragraphs 18, 20, and 21 for factual allegations of Leavitt's personal involvement. (Docket No. 22 p. 5.) This appears to be an error. Those paragraphs make allegations only as to the NCDHHS Defendants. Neither Leavitt nor any other Defendant is mentioned in those paragraphs of the complaint.

under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has held that the Eleventh Amendment bars suits against both state governments and entities that effectively constitute state governments unless Congress has acted to abrogate that immunity or those entities have given their consent to be sued. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

The first question that must be addressed is whether the Treasurer Defendants are entities that effectively constitute part of the state government of North Carolina. This is not an issue in serious dispute. State departments, such as the North Carolina Department of State Treasurer, are considered to be arms of a state for Eleventh Amendment purposes. *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir.1995). Further, official capacity suits against state officials are also considered to be suits against a state. *Id.* Defendants assert, and Plaintiffs do not specifically dispute, that the suit against Defendant Moore is an official capacity suit.[4]

■ Because Plaintiffs' suit against the Treasurer Defendants is a suit against the State of North Carolina, Eleventh Amendment immunity applies unless it has been waived or an exception to the rule of Eleventh Amendment immunity applies. Plaintiffs make arguments in both areas.

Plaintiffs' waiver argument is easily defeated. Plaintiffs claim that the Treasurer Defendants' immunity has been waived because immunity is not a valid defense where a government entity has entered into a contract with a plaintiff. *Paquette v. County of Durham*, 155 N.C.App. 415, 420, 573 S.E.2d 715, 718 (2002). Unfortunately, Plaintiffs ignore the fact that they do not allege that the Treasurer Defendants entered into a contract with them. As already set out, the Treasurer Defendants are mentioned in the complaint only in an introductory paragraph and in the section requesting injunctive relief. It is the other Defendants who are described as having entered into and breached a contract with Plaintiffs.[5] There was no waiver as to the Treasurer Defendants.

More importantly, Plaintiffs have not shown that any waiver effected by entering into a contract would also waive Eleventh Amendment immunity in Federal Court, as opposed to only waiving sovereign immunity in state court. Plaintiffs rely on the fact that when a state entity in North Carolina enters into a contract with a private party, the State waives the defense of sovereign immunity and allows it

---

4. Nor could they dispute it. Plaintiffs barely mention Moore in the complaint. They allege that the Department of State Treasurer holds funds held or seized from Plaintiffs and note that Moore is the Secretary of the Department. (Docket No. 1 ¶ 5). The next mention of Moore is another allegation that the Department of State Treasurer and Moore hold the funds (*Id.* ¶ 57) and a request that the Court order them to release the funds. No personal action, inaction, or even knowledge by Moore as an individual is alleged. There-

fore, while the word "individual" may be used in the case caption and at certain points in the complaint, Plaintiffs' suit against Moore is clearly an official capacity suit. Plaintiffs do not allege that Moore is personally holding any funds.

5. This is made doubly clear because the only relief requested from the Treasurer Defendants is injunctive relief—a type of relief not based on a contract involving Moore.

to be sued in the courts of North Carolina. *Paquette, supra.* However, consenting to suit in this Court by waiving Eleventh Amendment immunity is a different matter.

■ Sovereign immunity and Eleventh Amendment immunity involve more than whether a state can be sued on a particular cause of action. These concepts also encompass an issue of the proper jurisdiction for such a suit. As it turns out, "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)(citing *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)). *Florida Department of Health* is particularly important because the United States Supreme Court overruled a lower court ruling that Eleventh Amendment immunity had been waived based on a state's own waiver of sovereign immunity in state court. That case involved the Florida Department of Health's contract with a Medicaid provider. The issue is not just whether the State waived sovereign immunity so that it could be sued for breaches of contract in its own courts, but whether it also waived immunity for such suits brought in federal court. As with *Florida Department of Health,* the answer in this case is also in the negative.

In *Smith v. State,* 289 N.C. 303, 222 S.E.2d 412 (1976), the North Carolina Supreme Court held that sovereign immunity was waived by the State for disputes over contracts which it had entered into. The ruling applied to an action pending in state court. Plaintiffs fail to show that, in addition, the North Carolina Supreme Court intended to allow the State of North Carolina to be sued in federal court where any appeal would not involve the North Carolina Supreme Court in any fashion. In fact, the opinion raises a number of issues which counsel against any such an interpretation. First, the decision itself recognizes that the state legislature did not provide for a waiver for contract actions, like the federal government did in the Tucker Act, 28 U.S.C. § 1491. *Id.,* 289 N.C. at 313, 222 S.E.2d at 419. Also, it recognizes that its action did not allow for, much less guarantee, collectibility. *Id.,* 289 N.C. at 319, 222 S.E.2d at 423. Such important facts indicate that the court was necessarily proceeding with great caution in finding a waiver of sovereign immunity and that one would be amiss to attempt to give the decision a broad interpretation. Instead, the much more likely assumption would be that the North Carolina Supreme Court would have intended that any interpretation of the waiver be kept strictly under its supervision. For these reasons, the Court finds that the waiver of the State's sovereign immunity in contract actions only applies to actions proceeding in the North Carolina state courts, but not federal courts, even those sitting in North Carolina.

The same is true for Plaintiffs' claim based on the state constitution. In *Corum v. University of North Carolina Through Bd. of Governors,* 330 N.C. 761, 413 S.E.2d 276 (1992), the North Carolina Supreme Court held and reviewed prior case law holding that in absence of an otherwise adequate state remedy, certain core constitutional rights (free speech, taking of property) provided a direct cause of action against the State. However, again in waiving sovereign immunity, the court was quick to point out that in fashioning a remedy, the courts must proceed cautiously so as not to intrude on the rights and responsibilities of the other branches of the government. This again signals a de-

cision to keep the adjudication of state constitutional rights in state court. For these reasons, Plaintiffs may not proceed with either their contract or state constitutional claims against the state (including the official capacity claims) in this court and the claims should be dismissed.

Plaintiffs also make the broad claim that immunity does not apply for the federal and state constitutional claims alleged in the complaint. Here, they must necessarily be referring to the individual capacity claims because they rely on *Bivens* and *Corum*. *Corum*, for purposes of this discussion, is roughly a state law equivalent of *Bivens*. Whatever other problems may exist with Plaintiffs' argument (and those problems would be significant for reasons discussed elsewhere in this Recommendation), they again fail to address the fact that their complaint does not allege that the Treasurer Defendants have violated the United States or North Carolina Constitutions. The Treasurer Defendants are not mentioned in those claims and the other Defendants specifically are. Therefore, the question of whether or not Eleventh Amendment immunity applies to constitutional claims is irrelevant as to the Treasurer Defendants. No constitutional violation by them has been alleged.[6]

Plaintiffs' remaining argument is that an exception to Eleventh Amendment immunity applies because Plaintiffs' request for an injunction against the Treasurer Defendants seeks to enjoin an ongoing, prospective violation of federal law. If this is truly what Plaintiffs seek, there is a longstanding exception to Eleventh Amendment immunity for such injunctions. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, even a cursory examination of the complaint reveals that this is not what they seek from the Treasurer Defendants. The only relief that Plaintiffs seek from the Treasurer Defendants is an injunction ordering the Treasurer Defendants to pay money to Plaintiffs out of the North Carolina Treasury's funds. (Docket No. 1 ¶¶ 57–58.) Suits "seeking to impose liability which must be paid from public funds in the state treasury [are] barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This includes equitable relief for wrongfully withheld payments. *Id.* Plaintiffs, in their response to the Treasurer Defendants' motion to dismiss, cite to no case that would allow relief of the type they request from the Treasurer Defendants. In fact, the only case they cite other than *Young* is *Lytle v. Griffith*, 240 F.3d 404 (4th Cir.2001), a case where the plaintiffs sought to enjoin the enforcement of a loitering ordinance. Clearly, *Lytle* is factually inapposite. Plaintiffs seek the payment of money. The relief sought by Plaintiffs from the Treasurer Defendants does not fall under the rule in *Young* and is therefore barred by the Eleventh Amendment. The Treasurer Defendants' motion to dismiss should be granted and they should be dismissed from the case.

---

**6.** It should be noted at this point that no substantive cause of action has been alleged against the Treasurer Defendants in Plaintiffs' complaint. While the claim for injunctive relief is set out as a separate cause of action, it is really nothing more than a form of possible relief that can be awarded once a party has prevailed on another cause of action. *See, e.g., Noah v. Enesco Corp.,* 911 F.Supp. 305 (N.D.Ill.1995). As for the Treasurer Defendants, the complaint seeks injunctive relief against them without alleging that they have violated any law or failed to meet any legal obligation. *See* Discussion, *ante.* If, as will be discussed, this injunctive relief claim were not barred by the Eleventh Amendment, it would likely be dismissed against those Defendants in any event for failure to state a claim for relief.

## NCDHHS DEFENDANTS' MOTION TO DISMISS

The final motion to dismiss is brought by the NCDHHS Defendants. The primary argument they pursue is that the claims against them are barred by the Eleventh Amendment. This is so as to the state law contract claims and the alleged violations of the North Carolina Constitution for the same reasons set out in discussing the Treasurer Defendant's motion to dismiss. The NCDHHS Defendants are entitled to Eleventh Amendment immunity on those claims. To the extent the State has waived sovereign immunity for such suits in state court, it has not waived sovereign immunity for such claims when litigated in federal court. Consequently, Plaintiffs may not pursue those state law claims against the State (including official capacity suits) in federal court. *See Pennhurst, supra.* This jurisdictional or venue limitation also encompasses the exception to the bar of sovereign immunity for claims limited to prospective equitable relief as described in *Edelman.* That is, the exception does not apply to claims raised under, and based on, state law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900. The state law claims against the NCDHHS Defendants should be dismissed in their entirety.

The claims raised against the NCDHHS Defendants under the United States Constitution fare no better. They cannot stand, or at least cannot stand as independent claims. This is because direct causes of action do not ordinarily exist under the United States Constitution. *Williams v. Bennett,* 689 F.2d 1370 (11th Cir.1982). Exceptions have been made in situations such as existed in *Bivens.* This is because no adequate alternative remedy existed. However, where state officials are alleged to have violated a federal constitutional right, an adequate remedy does exist in the form of claims brought under § 1983 and there is no need to imply a direct constitutional cause of action. *Id.* This general principle has been specifically applied to bar independent claims based on alleged violations of due process. *Id.*; *Hearth, Inc. v. Department of Public Welfare,* 617 F.2d 381 (5th Cir.1980); *Hunt v. Smith,* 67 F.Supp.2d 675 (E.D.Tex.1999); *Lombard v. Board of Educ. of City of New York,* 784 F.Supp. 1029, 1034 (E.D.N.Y. 1992). Because those are exactly the type of allegations made in portions of Plaintiffs' complaint setting out their cause of action under the United States Constitution, they cannot proceed with those claims as independent causes of action. The allegations contained in that section of the complaint will be subsumed by, and treated as part of, Plaintiffs' cause of action under § 1983.

■ The remaining substantive claims in Plaintiffs' complaint are brought pursuant to § 1983. As has already been set out, the Eleventh Amendment prohibits the award of damages under § 1983 and also prevents the Court from ordering the NCDHHS Defendants to pay money to Plaintiffs or release withheld payments. Plaintiffs try to avoid this result by limiting the relief which they seek. Plaintiffs base their relief on their contention that because the NCDHHS Defendants are engaging in an ongoing violation of federal law, merely ordering the NCDHHS Defendants to stop the violation and make the payments would be prospective relief that is not barred by the Eleventh Amendment. Whether or not the relief sought by Plaintiffs is prospective is a question that bears close examination.

■ Prospective relief is allowable despite the Eleventh Amendment if (1) the alleged violation by the defendant is ongoing and (2) the relief sought is only prospective. *Republic of Paraguay v. Allen,*

134 F.3d 622, 627 (4th Cir.1998). Plaintiffs certainly allege an ongoing violation of federal law. They claim that the NCDHHS Defendants began withholding payments under 42 C.F.R. § 455.23 in 1997, and that they have "continually" withheld payments since that time. (Docket No. 1 ¶¶ 14–15.) They also state that the NCDHHS "is formally maintaining its investigation" in order to continue to withhold the payments. (*Id.* ¶ 31.) Finally, the complaint alleges that the NCDHHS Defendants improperly seized property. Apparently, they continue to hold it because Plaintiffs seek its return. (*Id.* ¶ 60.)

From this it is clear that some of the relief sought by Plaintiffs is prospective in nature. For instance, they seek a declaration that "42 C.F.R. § 455.23 requires a continuing, active investigation or the filing of legal proceedings in order to justify the continuing withholding of funds." They also seek a declaration that "there is no continuing, active investigation of Plaintiff Housecalls Home Health Care, Inc." (*Id.* ¶ 36). Such declarations would have effects not just in the past and present, but also into the future. For example, were Plaintiffs to obtain a favorable ruling, they might be able to bring a state breach of contract action in state court.[7]

Defendants compare this case to the case of *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). In *Green*, the United States Supreme Court found that declaratory relief sought by the plaintiffs was barred by the Eleventh Amendment. However, *Green* is easily distinguishable. There, the plaintiffs sought a declaration that the actions of officials in Michigan had violated federal law as it had existed before an amendment to the law. This relief was found to be barred because it addressed only past, as opposed to present and future, actions. (*Id.* at 72–73, 106 S.Ct. 423.) In the case at bar, federal law has not changed and the NCDHHS Defendants' violation of the law is alleged to be ongoing. The declaratory relief described above is not barred.

Although some of the relief sought by Plaintiffs under § 1983 is not barred by the Eleventh Amendment, the Court finds that other portions of the relief Plaintiffs seek are indistinguishable from requests for relief that other courts have found to be retroactive in nature and, therefore, barred by the Eleventh Amendment. For instance, in addition to the declaratory relief listed above, Plaintiffs also ask that the Court declare that "Plaintiff Housecalls Home Health Care, Inc. is entitled to payment of funds withheld by Defendants." (Docket No. 1 ¶ 36.) Similarly, they request that the Court issue orders compelling the NCDHHS to release the withheld payments allegedly owed to Plaintiff Housecalls Home Health Care, Inc. (*Id.* ¶¶ 58–59.)

In arguing that any order regarding the payment of the withheld payments would

---

**7.** Like prospective injunctive relief, prospective declaratory relief also falls within the exception to Eleventh Amendment immunity. *Suarez Corp. Industries v. McGraw*, 125 F.3d 222, 229 (4th Cir.1997). Plaintiffs are cautioned that even if they prevail, any declaratory relief they might eventually receive would have to be narrowly tailored to address only any attempts by the NCDHHS Defendants to deny requests for payment based on 42 C.F.R. § 455.23 in the future. *See Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093, 1098 (2d Cir.1991)(relief can apply to future requests for payment, not past requests). It is not clear whether Plaintiffs can even make such requests in state court at this late date. It may also be that the NCDHHS Defendants would have some other reason for withholding, or even denying payment, in the future. Given that the case will be proceeding, but that any relief will be quite limited, both parties may wish to explore the possibilities of resolving the case prior to expending time and money on discovery.

be impermissible retroactive relief, the NCDHHS Defendants cite to *Edelman, supra* and *Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093 (2d Cir.1991). The facts in both of these case are instructive. In *Edelman,* a lower court's decree required payments to be made by the state of Illinois, not only on future applications for federal aid benefits, but also on past applications that had been wrongfully denied. The part of the decree forcing the payments on the past applications was found to be barred. *Edelman,* 415 U.S. at 668–671, 94 S.Ct. 1347. Likewise, in *Tekkno,* the plaintiff sought a preliminary injunction forcing New York State to pay it for withheld Medicaid reimbursement payments. This relief was held to be barred by the Eleventh Amendment because it addressed only past requests for payments. *Tekkno,* 933 F.2d at 1098.

Any attempts by Plaintiffs to seek payments that have been previously withheld are not materially different from the relief found barred in *Edelman* and *Tekkno.* Plaintiffs cite to *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), and *Cyrus ex rel. McSweeney v. Walker,* 409 F.Supp.2d 748 (2005). However, the injunction allowed in *Milliken* only ordered the State of Michigan to pay the future costs for an education program. No past payments were involved. Likewise, in *Cyrus,* a preliminary injunction restoring benefits was allowed under the Eleventh Amendment because it restored the benefit payments from the time of the injunction. It did not order past payments. *Cyrus,* 409 F.Supp.2d at 750, 752–53. Plaintiffs have not cited any case allowing the type of retroactive payments they seek. Their claim seeking those payments is barred by the Eleventh Amendment.

■ There is one final type of relief requested by Plaintiffs which has not been addressed. Plaintiffs seek an injunction ordering the NCDHHS Defendants to return the property that was seized during any investigations. (Docket No. 1 ¶ 60.) Like injunctions for prospective relief, injunctions for the return of seized property, as opposed to money or withheld payments, are also not barred by the Eleventh Amendment. *See In re Mount Moriah Elevator, Inc.,* 143 B.R. 905 (Bankr. W.D.Mo.1992). For this reason, Plaintiffs' return of property claim is not barred.

■ The next argument raised by the NCDHHS Defendants is that Plaintiffs' claims are barred by the applicable statutes of limitation. Only the remaining portions of Plaintiffs' § 1983/declaratory/injunctive relief claims need to be addressed, because the bulk of the claims are being dismissed for other reasons. As noted by the NCDHHS Defendants, the applicable statute of limitations for § 1983 actions is three years. *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991). However, the statute of limitations does not bar actions involving ongoing violations. *See, e.g., Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653 (4th Cir.1989). Given that the Court has already found that Plaintiffs' remaining claims for declaratory relief are based on an alleged ongoing violation of federal law, they are not barred.

It is a different matter with respect to Plaintiffs' return of property claim. It may well be subject to dismissal given that any seizure occurred on a date certain in the past. However, Defendants have not specifically addressed that portion of Plaintiffs' claims. Therefore, the Court will not decide the issue at this time.

■ Finally, the NCDHHS Defendants contend that Plaintiffs' claims must be dismissed because § 1983 claims cannot be asserted against states or state officials in

their official capacity. This proposition, while generally true, does not apply to claims for prospective relief raised against state officials in their official capacity under the *Ex Parte Young* exception to the Eleventh Amendment. *See, e.g., Antrican v. Odom,* 290 F.3d 178 (4th Cir.2002). Plaintiffs remaining claims are such claims and should not be dismissed.

**IT IS THEREFORE RECOMMENDED** that the United States Department of Health and Human Services and Mike Leavitt's motion to dismiss (Docket No. 12) be granted and that all claims against them be dismissed.

**IT IS FURTHER RECOMMENDED** that the North Carolina Department of State Treasurer and Richard Moore's motion to dismiss (Docket No. 6) be granted and that all claims against them be dismissed.

**IT IS FURTHER RECOMMENDED** that the North Carolina Department of Health and Human Services and Carmen Hooker Odom's motion to dismiss (Docket No. 10) be granted in part and denied in part as set out above against the Secretary of North Carolina Department of Health and Human Services and this matter should only proceed as to the part of Plaintiffs' § 1983 claim which seeks (1) prospective declaratory relief concerning whether 42 C.F.R. § 455.23 requires a continuing active investigation or the filing of legal proceedings in order to justify the continued withholding of funds and whether there is such an investigation concerning Housecalls Home Health Care, Inc., and (2) the claim seeking an injunction ordering the return of seized property, and that all other claims be dismissed.

Dated April 5, 2007.